UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

BUSHAWN SHELTON,

Defendant.

18-CR-609 (RJD)

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO SUPPRESS INSTAGRAM RECORDS
ILLEGALLY SEIZED PURSUANT TO A SEARCH WARRANT**

Susan K. Marcus
Elisa Y. Lee
Law Firm of Susan K. Marcus
29 Broadway, Suite 1412
New York, NY 10006
susan@skmarcuslaw.com

*Attorneys for Bushawn Shelton*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .............................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

   A.   Challenges to Search Warrants for Social Media Accounts ........................................ 2

     1.   All Three Warrants Were Overbroad ................................................................ 7

     2.   The Warrants Were Misleading ...................................................................... 9

     3.   The Warrants Lacked Probable Cause and a Nexus ......................................... 11

   B.   Suppression is Necessary to Deter Government Misconduct ..................................... 16

III.  CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

CASES

*Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)------------------------------------------------------- 16

*Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) ----------------------------------------------- 15

*Franks v. Delaware*, 438 U.S. 154 (1978) ------------------------------------------------------------- 9, 10

*Groh v. Ramirez*, 540 U.S. 551, 568 (2004) ------------------------------------------------------------- 11

*Groh*, 540 U.S. at 558-59 ------------------------------------------------------------------------------- 2, 16

*Illinois v. Gates*, 462 U.S. 213 (1983)---------------------------------------------------------------------- 10

*Illinois v. Gates*, 462 U.S. 213, 238 (1983)---------------------------------------------------------------- 12

*In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 99 (2d Cir. 2016)------------------------------ 8

*Massachusetts v. Shepherd*, 468 U.S. 981 (1984) ---------------------------------------------------------- 3

*McColley v. County of Rensselaer*, 740 F.3d 817 (2d Cir. 2014) -------------------------------------- 10

*McDonald v. United States*, 335 U.S. 451 (1948) ---------------------------------------------------------- 3

*United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) --------------------------------------------- 8

*United States v. Abrams*, 615 F.2d 541, 545 (1st Cir. 1980) --------------------------------------------- 9

*United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) --------------------------------------------- 8

*United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000) -------------------------------------------- 9, 10

*United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982) ------------------------------------------------- 17

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) -------------------- 15

*United States v. Coreas*, 419 F.3d 151 (2d Cir. 2005)----------------------------------------------------- 9

*United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999)------------------------------------------------ 9

*United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) ---------------------------------------------- 2

*United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) ----------------------------------------------- 15

*United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017) ------------------------------------- 11

*United States v. Harvey*, 2022 U.S. Dist. LEXIS 40979 (E.D.N.Y. Mar. 8, 2022)------------------------ 13

*United States v. Jacobson*, 4 F. Supp. 3d 515, 521 (E.D.N.Y. 2014)--------------------------------------- 2

*United States v. Leon*, 468 U.S. 897 (1984) --------------------------------------------------------------- 16

*United States v. Medlin*, 842 F.2d 1194 (10th Cir. 1988) --------------------------------------------- 17

*United States v. Meregildo*, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012) ----------------------------- 14

*United States v. Purcell*, 967 F.3d 159, 181 (2d Cir. 2020)------------------------------------------- 15

*United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013) --------------------------------------------- 9

*United States v. Ramirez*, 523 U.S. 65, 71 (1998) ---------------------------------------------------- 16

*United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990) ----------------------------------------------- 2

*United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010)----------------------------------------------------- 8

*United States v. Scales*, 19 Cr. 96 (S.D.N.Y. Mar. 17, 2021) ---------------------------------- 12, 13, 14

*United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000)------------------------------------ 2, 3, 17

*United States v. Shi Yan Liu*, 239 F.3d at 141 ----------------------------------------------------------- 17

*United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004)------------------------------------------------- 12

*United States v. Ulbricht*, 858 F.3d 71, 98–99 (2d Cir. 2017) ------------------------------------------- 2

*United States v. Vilar*, No. 05 Cr. 621, 2007 WL 1075041, (S.D.N.Y. Apr. 4, 2007) ------------------- 13

*United States v. Voustianiouk*, 685 F.3d 206 (2d Cir. 2012) ---------------------------------------------- 3

*United States v. Wagner*, 989 F.2d 69, 74-75 (2d. Cir. 1993) ------------------------------------------ 16

*United States v. Wagner*, 989 F.2d 72-73 (2d Cir. 1993) ---------------------------------------------10, 16

*United States v. Wey*, 256 F. Supp. 3d 355, 380 (S.D.N.Y. 2017) --------------------------------------- 3

*United States v. Wey*, 256 F.Supp.3d --------------------------------------------------------------------- 3

*United States v. White*, 489 F.Supp.3d 274, 278-79 (S.D.N.Y. 2020) ------------------------------- 14

*United States v. Zemlyansky*, 945 F. Supp. 2d 438, 453 (S.D.N.Y. 2013) ---------------------------- 2, 3, 13

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007) ------------------------------------------------------------------3

*Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967) ------------------------------------- 11

*Wey*, 256 F.Supp.3d ----------------------------------------------------------------------------------------- 17

*Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) --------------------------------------------------------------- 14

OTHER AUTHORITIES

Orin S. Kerr, Fourth Amendment Seizures of Computer Data, 119 Yale L.J. 700 (2010) ----------- 16

RULES

Fed. R. Crim. P. 41(e)(2)(B) ----------------------------------------------------------------------------- 16

TREATISES

2 LaFave, *Search and Seizure*, § 4.6(a) (4th ed. 2004)--------------------------------------------------9

Defendant Bushawn Shelton, by and through his counsel, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, and the Fourth Amendment to the United States Constitution, respectfully moves for the suppression of his Instagram accounts seized as a result of unconstitutional warrants, and such further relief as the Court may deem just and proper. A hearing is requested on this motion.[1]

## I.        PRELIMINARY STATEMENT

The Government violated Mr. Shelton's Fourth Amendment rights by seeking and executing unconstitutionally overbroad warrants that authorized the search and seizure of his most personal and private information on his social media accounts. The contents of our private lives are kept in social media. Family photos reside there; information about health conditions, relationships, finances, opinions, and daily habits are stored in social media accounts and preserved for safe-keeping on servers operated by companies like Instagram.

The government sought sweeping search warrants for all of Mr. Shelton's personal information, with no limits on or care for the intrusions into his privacy, based on one statement from a confidential source that there was a message to him on one Instagram account at an unknown time. Based on that, the government sought warrants for the entirety of two Instagram accounts, including a private one that they had no probable cause to believe contained any evidence of a crime. The government has disclosed thousands of pages of social media records, documenting the unconstitutionally wide net their search warrants cast in fishing expeditions for inculpatory evidence. The social media warrants challenged below are overbroad, lacking in probable cause, materially misleading, and the evidence gathered should be suppressed under the Fourth Amendment.

---

[1] Counsel reserves the right to supplement this motion upon disclosure of additional information.

## II.     ARGUMENT

### A.  Challenges to Search Warrants for Social Media Accounts

To prevent "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), the Warrants Clause of the Fourth Amendment "requires particularity and forbids overbreadth," *United States v. Jacobson*, 4 F. Supp. 3d 515, 521 (E.D.N.Y. 2014) (Bianco, J.) (internal citation and quotation marks omitted). A warrant's "description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013). "Courts implement the particularity requirement by insisting that warrants not 'leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized.'" *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 453 (S.D.N.Y. 2013) (quoting *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990)). Put differently, "a warrant must be sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize." *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (internal quotation marks and alterations omitted).

The Second Circuit has held that, under the particularity requirement, a warrant must (1) identify the specific offense for which there is probable cause; (2) describe the place to be searched; and (3) specify the items to be seized in relation to the designated crimes. *See United States v. Ulbricht*, 858 F.3d 71, 98–99 (2d Cir. 2017); *Galpin*, 720 F.3d at 445-46. Moreover, the Supreme Court has held that the Fourth Amendment "requires particularity in the warrant, not in the supporting documents," and, accordingly, "the fact that the warrant *application* adequately described the 'things to be seized' does not save the *warrant*." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (emphasis in original).

 "Courts implement the particularity requirement by insisting that warrants not 'leave to the unguided discretion of the officers executing the warrant the decision as to what items may be

seized.'" *United States v. Wey*, 256 F. Supp. 3d 355, 380 (S.D.N.Y. 2017) (quoting *Zemlyansky*, 945 F.

Supp. 2d at 453). These requirements "are not 'formalities.'" *United States v. Voustianiouk*, 685 F.3d

206, 210 (2d Cir. 2012) (quoting *McDonald v. United States*, 335 U.S. 451, 455 (1948)). "The uniformly

applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity

requirement of the Fourth Amendment is unconstitutional." *Massachusetts v. Shepherd*, 468 U.S. 981,

988 n. 5 (1984).

A search warrant is overbroad if its "description of the objects to be seized . . . is broader

than can be justified by the probable cause upon which the warrant is based." *Wey*, 256 F.Supp.3d at

382. Probable cause is demonstrated where "the totality of circumstances indicates a 'fair possibility

that contraband or evidence of a crime will be found in a particular place.'" *Walczyk v. Rio*, 496 F.3d

139, 156 (2d Cir. 2007) (citations omitted). General searches have been described as "especially

pernicious," and they "have long been deemed to violate fundamental rights." *Shi Yan Liu*, 239 F.3d

at 140 (citation and quotation marks omitted).

Mr. Shelton challenges the constitutionality of the following warrants:



- Search Warrant for account "████████" (Ex. A, "████████ Warrant," September 11, 2018);
- Search Warrant for account "██████" (Ex. B, "██████ Warrant," September 19, 2018);
- Joint Search Warrant for accounts "█████████" and "██████" (Ex. C, "█████████" and "██████ Warrant," October 9, 2018).

Factual Bases for "██████████" and "██████" Warrants

The government first sought a search warrant for the account "████████," on

September 11, 2018, before the death of Mr. Sylvester Zottola (which occurred on October 4, 2018).

The affidavit to the warrant for the ████████ account requests █████████████

████████████████████████████," from November 2017 to

September 11, 2018. The search warrant for the "██████" Instagram account was sought on

September 19, 2018, and requested information from November 2017 to September 19, 2018. A

separate single search warrant was requested on October 9, 2018 for both accounts "████████

████████████████████" Ex. C, Joint Search Warrant, at ████████; Ex. F., Joint Search

Warrant Affidavit, at ████████. That warrant demanded Mr. Shelton's account information from

September 11, 2018 to the date of the Order. Attachment B is identical in all three affidavits, and

spells out the breathtaking breadth of information sought in all three warrants:



The warrant affidavits also request "████████████████████████████

████████████████████████████████████████

████████████████████████████████████████" Ex. A, ██████████ Warrant, Attachment B, at ███████; Ex. B, ████████ Warrant, Attachment B, at ████████; Ex. C, Joint Search Warrant, Attachment B, at ████████.

The factual bases for all three warrants are nearly identical. As justification for searching the entirety of one year's worth of information on Mr. Shelton's business and private social media accounts, the warrant affidavits state that there is probable cause to believe that someone named ████████ as well as other "various individuals" violated 18 U.S.C. 1958 (conspiracy to commit murder for hire); 18 U.S.C. 1959 (conspiracy to commit murder in aid of racketeering), 18 U.S.C. 924(c) (unlawful use and possession of firearms).

The affidavits describe ██████████████████████████████████████ ████████████████████████████████. Ex. D, ██████████ Affidavit, at ██████ The affidavits state that ████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████

The affidavits state that ████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████████████████

████████████████████████████

The affidavits state that ██████████████████████████████
███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

The affidavits then describe ████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████" Ex. D at ██████. The affidavits describe

███████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

Here the factual bases to search the two Instagram accounts diverge. For the ████████████

warrant requested through September 11, 2018, the affidavit states that █████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ The affidavit does not specify when these conversations occurred. The only

mention of a time frame for conversations between ████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████

The affidavit for the "█████████" through September 19, 2018 account contains no facts linking any communications, posts or content to the alleged crimes, simply facts indicating that the account is associated with Mr. Shelton. The affidavit admits that the "█████████" account is private, and is his personal account. Agent Zoufal, the affiant, makes the broad generalization that "████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████████████" Ex. E, Affidavit for "█████████" Account, at █████. Agent Zoufal had no information that this was the case and provided no specifics in the affidavit.

The Joint Search Warrant for both accounts from September 11, 2018 to the present incorporates by reference the prior affidavits. Ex. F at █████. It does not contain any factual bases (or indeed, any additional factual bases at all) to conclude that there would be evidence of criminal activity on the █████████ or █████████ Instagram accounts between September 11, 2018 and October 9, 2018, the date of the Order.

The warrants for Mr. Shelton's social media accounts were overbroad, lacked particularity, contained misleading statements, and did not provide probable cause that there would be evidence of the crime within the material sought.

        1.   *All Three Warrants Were Overbroad*

The warrants request the entirety of information for Mr. Shelton's Instagram accounts. This is as broad a search as can be done, and is unconstitutional as a result. Further, the first two warrants requested information for the entirety of the period from November 2017 through September 11 and 19, 2018. Yet the criminal activity alleged in the warrant related to █████████████████

████████████████████████. The only fact that supports probable cause to believe that there would be incriminating information within the Instagram accounts is that ██████████ ████████████████████████████████ Law enforcement did not specify in the warrant when the ████████████████████████. Yet the warrant allowed a search of an entire year of social media records for any Instagram account associated with Mr. Shelton.  "An otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause on which the warrant is based." 2 LaFave, *Search and Seizure*, § 4.6(a) (4th ed. 2004).  The warrant violates the Fourth Amendment's particularity requirement because it "allow(s) a search of all [electronic] records without description or limitation." *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (citation omitted). The Fourth Amendment's prohibition against overbreadth is "necessarily tied" to the particularity requirement because "limiting the authorization to search to the specific areas and things for which there is probable cause to search . . . ensures that the search will be carefully tailored to its justifications." *In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 99 (2d Cir. 2016).

The government used sweeping warrants to justify massive seizures of Mr. Shelton's entire social media account over one year. If it were justified at all, the social media warrant should have limited the request to a particular message on his ██████████ Instagram Account, and only for the discrete time period that ████████████████████████████████████, not the entirety of both the business and personal accounts for over one year. *See United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) (finding that a search of an entire Facebook account was overly broad and explaining that "when it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data"); *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) (warrant overbroad when law enforcement knew that the evidence in support of probable cause revolved only around a three-

month period in 1999; the authorization to search for evidence irrelevant to that time frame

described as "rummaging"); *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999) ("Failure to limit

broad descriptive terms by relevant dates, when such dates are available to the police, will render a

warrant overbroad."); *United States v. Abrams*, 615 F.2d 541, 545 (1st Cir. 1980) (holding that warrant

that authorized seizure of all "business and billing and medical records" in doctors' office that

showed Medicare fraud was impermissibly general). Particularly because ███████████

████████████████████████████████████ - they should have been able to

appropriately limit the search. Further, the warrant states that ███████████████████

███, so there was no basis to search Mr. Shelton's Instagram accounts before that date.

### 2. *The Warrants Were Misleading*

Under *Franks v. Delaware*, a defendant may challenge a search conducted pursuant to a

warrant where the affidavit submitted in support of the warrant application is alleged to be

deliberately or recklessly false or misleading. *See* 438 U.S. 154, 155-56 (1978). To prevail, a defendant

must show that the warrant affiant made at least recklessly false statements or omissions that were

material to the issuing court's finding of probable cause. *See id.* at 156; *United States v. Rajaratnam*, 719

F.3d 139, 146 (2d Cir. 2013). The two relevant inquiries are (1) whether an affidavit was intentionally

or recklessly misleading and (2) whether any misstatement or omissions in the affidavit were

material. *See, e.g.*, *Rajaratnam*, 719 F .3d at 146; *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir.

2000).

To determine whether misstatements are "material," a court must set aside the falsehoods in

the application and determine whether what remains supports a finding of probable cause. *See, e.g.*,

*United States v. Coreas*, 419 F.3d 151, 155 (2d Cir. 2005). For omissions, the court must determine

whether, if the omitted material had been included in the affidavit, the affidavit would still establish

probable cause for a search. *See Rajaratnam*, 719 F.3d at 146. And when an affidavit contains

misstatements and omissions, a reviewing court does not afford any deference to the magistrate

judge's probable cause determination. *See Canfield*, 212 F.3d at 717. If the defendant meets the *Franks*

standard, then the "search warrant must be voided and the fruits of the search excluded to the same

extent as if probable cause was lacking on the face of the affidavit.'" 438 U.S. at 156.

   In the context of police informants, to decide whether a confidential witness or informant's

information provides probable cause to support a search warrant, a court must consider the totality

of the circumstances, including the informant's veracity, reliability, and basis for knowledge, as well

as whether the informant's information has been corroborated by independent police investigation.

*See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 228-30 (1983); *McColley v. County of Rensselaer*, 740 F.3d 817, 823

(2d Cir. 2014); *United States v. Wagner*, 989 F.2d 72-73 (2d Cir. 1993) ("Information may be

sufficiently reliable to support a probable cause finding if the person providing the information has a

track record of providing reliable information, or if it is corroborated in material respects by

independent evidence…If a substantial amount of information from an informant is shown to be

reliable because of independent corroboration, then it is a permissible inference that the informant is

reliable and that therefore other information that he provides, though uncorroborated, is also

reliable.") . Further, if a search warrant is void under *Franks*, the good-faith exception to the

exclusionary rule does not apply. *See United States v. Leon*, 468 U.S. 897, 923 (1984); *United States v.*

*Reilly*, 76 F.3d 1271, 1280-81 (2d Cir. l996).

   In this case, ███████████████████████████████████████████████████████

████████████████████████████████████████████████ are the bases for

probable cause to search the entirety of both of Mr. Shelton's Instagram accounts. *See* Ex. D, ████

████ Ex. E, ████████ .  The affidavits state that ████████████████████████████

████████████████████████ . None of the affidavits include the crucial information that ███

████████████████████████████████ , and therefore could not have been communicating

10

with Mr. Shelton over any Instagram account past that date. Further, Agent Zoufal could have disclosed the period that ███ was supposedly communicating with Mr. Shelton over Instagram, and could even have obtained the messages from ███ account to establish the existence of the messages or corroborate ███ account. He did not.

By withholding facts that contradict the confidential source, and omitting easily verifiable information, all three warrant affidavits thus misrepresented and withheld information that was critical to the magistrate's assessment of the informant's reliability and veracity, and the probable cause determination. This was materially misleading, and the omission was at least reckless and perhaps intentional.

### 3. The Warrants Lacked Probable Cause and a Nexus

Nor did the social media warrants have a sufficient nexus between the massive quantity of information sought and any probable cause asserted. "Regardless of whether an individual is validly suspected of committing a crime, an application for a search warrant concerning his property or possessions must demonstrate cause to believe that 'evidence is likely to be found at the place to be searched.'" *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017) (quoting *Groh*, 540 at 568). And "'[t]here must, of course, be a nexus . . . between the Item to be seized and criminal behavior.'" *Id.* (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)) (internal citation omitted). The police must have reason to believe that there would be evidence contained in the place to be searched, and that it would "contain incriminating evidence about his suspected offense." *Id.* at 1273.

The first search warrant for the ███████ does not provide probable cause to search the entire account. There is no time frame asserted for when the messages between ███ and Mr. Shelton occurred.  Nothing in the affidavit provides probable cause to search the rest of his account, or his "███████" private account at all. Further, nothing in the facts alleged provide probable

cause to search the ███████████ account before ███████████████████████████
███████████████████████████████████████████████████████████████████. For
the third and joint warrant for both accounts between September 11 and October 9, 2018, the
warrant does not provide any information that there would be evidence of a crime on either account
between September 11 and October 9, 2018, simply that a crime occurred on October 4, 2018. It
simply states: "███████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████." Ex. F, Joint Search Warrant
Affidavit, at ██████

It is well-established that the probable cause requirement of the Fourth Amendment is
location-specific: there must be "a fair probability that contraband or *evidence of a crime will be found in a*
*particular place.*" *Gates*, 462 U.S. at 238 (emphasis added). A search warrant application merely alleging
that an individual engaged in criminal activity does not provide probable cause to search the entirety
of that individual's possessions. *See Coolidge*, 403 at 467 Fourth Amendment's objective is to prevent
"general, exploratory rummaging in a person's belongings"). Rather, probable cause must be based
on "a sufficient nexus between the criminal activities alleged" and the location or items searched.
*United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). Judge Rakoff in *United States v. Scales*, 19 Cr. 96
(S.D.N.Y. Mar. 17, 2021) suppressed the Facebook account based on similar facts as here. Judge
Rakoff ruled:

> The social media warrant application contained mere an allegation of fraud, evidence that
> Mr. Scales was engaged in criminal activity, it had very little evidence to show that it was
> likely that evidence of that activity could be found on Mr. Scales' Facebook account. It noted
> in the application that Mr. Scales' was Facebook friends with two co-conspirators and also
> that one of those co-conspirators sent an image of the murder victim to someone whom
> scales had initially allegedly recruited as the shooter that neither the sender nor the recipient
> of that message was Mr. Scales. I don't really think that is sufficient to support a warrant. Mr.
> Scales had 450 Facebook friends so that the mere fact that two of them were allegedly co-
> conspirators does not lead to the inference they used Facebook to communicate with them
> about criminal activity. And, indeed, I don't see any evidence in the warrant application that

12

anyone, let alone Mr. Scales, used Facebook to communicate concerning the conspiracy in any respect. The application includes some conclusory language but of course what I am concerned with are specific factual allegations contained in the application.

*Scales*, Mar. 17, 2021 Tr. at 17-18. In a "thoughtful and scholarly opinion," *Zemlyansky*, 945 F. Supp.

2d at 453, Judge Karas noted "two factors that, above others, tend to define a warrant's insufficient

particularity." *United States v. Vilar*, 05 Cr. 621, 2007 U.S. Dist. LEXIS 26993, at *66 (S.D.N.Y. Apr.

4, 2007):

> First, warrants are generally found to be insufficiently particular where nothing on the face of the warrant tells the searching officers for what crime the search is being undertaken. Second, warrants will frequently lack particularity where they include a general, catch-all paragraph or provision, often one authorizing the seizure of any or all records of a particular type.

*Id.* (quotation marks, citations, and alterations omitted); *see Zemlyansky*, 945 F. Supp. 2d at 453-59

(applying *Vilar*).

In *Zemlyansky*, Judge Oetken disagreed with the government's assertion that a bare citation to

a statute – in that case, the statutes related to different kinds of fraud and money laundering – gave

the executing agents notice of the alleged crime at issue. *Zemlyansky*, 945 F. Supp. 2d at 454. Judge

Oetken noted that the warrant gave no "actual limitation based on criminal offense." *Id.* at 455.

Similarly, the mere citation to the criminal activities of another codefendant in the warrants was

insufficiently limiting. A warrant that allows agents to search every communication without

limitation is overbroad on its face.

The fact that the warrant states that ███████████████████████████████████████, does

not establish a nexus between criminal activity and his social media accounts. The ██████ are not

described with any particularity. Nor is the ██████ identified. Nor does the warrant state when

that ██████ appeared on Mr. Shelton's Instagram account. In *United States v. Harvey*, 2022 U.S. Dist.

LEXIS 40979 (E.D.N.Y. Mar. 8, 2022), Judge Johnson found that the Social Media Warrant affidavit

set forth a thin basis for probable cause; namely, that Harvey uploaded a photo of himself wearing

the same sweatshirt that he also wore on the night of the crime, to his Facebook and Instagram

accounts. *Id.* at 24. The Court found that the general statement in the warrant "based on the affiant's

training and experience, individuals engaged in criminal conduct often upload photographs, images

and written statements reflecting that criminal conduct on social media accounts and use social

media accounts, such as Facebook, Instagram, and/or Snapchat to communicate with others

regarding that conduct" did not provide a substantial basis for the magistrate to find probable cause.

*Id.* at 24-25. "The Court does not see how that coincidence increases the probability of finding more

evidence of Harvey's criminal conduct, such as 'written statements,' in those accounts. If such

evidence were discovered, it would appear to be a product of luck." *Id.* at 25.

      Even if the mention of ██████████████████████████████████████████

████████████████████████ this does not provide probable cause. *See Ybarra v. Illinois*, 444 U.S.

85, 91 (1979) ("mere propinquity to others independently suspected of criminal activity does not,

without more give rise to probable cause to search that person."). *Cf. United States v. White*, 489

F.Supp. 3d 274, 278-79 (S.D.N.Y. 2020) (probable cause to search Instagram account where alleged

victim of robbery told investigators that he had seen defendant wearing some of the stolen jewelry in

an Instagram photo and publicly available photos on Instagram showed defendant wearing jewelry

resembled that which he allegedly stole from victim); *United States v. Meregildo*, 883 F. Supp. 2d 523,

526 (S.D.N.Y. 2012) (probable cause to search Facebook account where defendant "posted

messages regarding prior acts of violence, threatened new violence to rival gang members, and

sought to maintain the loyalties of other alleged members of [defendant's] gang").

      As Judge Rakoff aptly stated in suppressing the Facebook warrant in *Scales*, the assertion that

"We have every reason to believe he is a crook so let's go get -- whatever it might be there on

Facebook, was something that might turn up to support our allegations of crookedness…  won't

justify any warrant in the world." *Scales*, 19-CR-926, Mar. 17, 2021, Tr. at 20-21. "[B]road catch-all phrase[s]" signals overbreadth. *See United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992).

Although the government attempted to distinguish between the unlimited information to be disclosed by Instagram and the more circumscribed information connected to the subject offenses "to be seized" by the government, this distinction does not hold. The warrant requiring Instagram to turn over unlimited information from Mr. Shelton's Instagram account was a seizure by the government: Once Instagram turned over that information, the government had seized it under any logical meaning of the word "seizure." *See United States v. Purcell*, 967 F.3d 159, 181 (2d Cir. 2020) ("the "seizure" was law enforcement's receipt of material handed over by Facebook, Inc. under the terms specified by the warrant"); *see also* Orin S. Kerr, Fourth Amendment Seizures of Computer Data, 119 Yale L.J. 700 (2010) (concluding that copying data "seizes" it under the Fourth Amendment).

After its initial seizure of all electronic information, the government was required to process that data to identify, and finally seize, only data within the scope of the warrants. *See* Fed. R. Crim. P. 41(e)(2)(B). Here, however, the warrant specified no keywords or other limitation to cabin the government's search of the electronic data. Indeed, the warrant allows a review in any manner the government sees fit, including by "survey[ing]" all files, and opening or "cursorily read [ ]" each file.

This type of unlimited search, allowing the government to review everything without any effort to simply look for documents relevant to the asserted probable cause during the execution of the search, permitted seizure of items outside the scope authorized by a search warrant and is unconstitutional. *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) ("The process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect.") (*overruled in part on other grounds*, *Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018)).

A review of both accounts shows the overbreadth. The return for the ████████ account is 1,785 pages. There are entries starting from 2015. ████████ is a business account, and contains posts about ████████████████████████. The account contains conversations/ posts with his family and friends. The ████████ account is private, entirely personal, and is over 600 pages.

Further, the information provided in the warrant to establish probable cause is stale. The warrant asks for information from November 2017 to September 2018, alleges the communications on Instagram occurred on an unspecified date (but presumably in ████████████ before the application for the warrant), and alleges the last criminal activity was July 11, 2018, 60 days earlier. This information was stale, and should not be a basis for information two months later. *See United States v. Wagner*, 989 F.2d 69, 74-75 (2d. Cir. 1993) (finding that a six-week delay between a drug sale and a warrant rendered the search warrant stale).

The information from this warrant is unconstitutional for the reasons set forth above and should be suppressed.

### B.  Suppression is Necessary to Deter Government Misconduct

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). This governs both the Fourth Amendment analysis and the acceptable execution of a search warrant. *United States v. Ramirez*, 523 U.S. 65, 71 (1998). No reasonable law enforcement agent can rely upon unparticularized and overbroad warrants, which lack a sufficient nexus between the asserted probable cause and the areas to be searched. *Cf. United States v. Leon,* 468 U.S. 897 (1984). Instead, search and seizure pursuant to an obviously deficient warrant is, like a warrantless search and seizure, presumptively unreasonable. *Groh,* 540 U.S. at 558-59; *see also Coolidge,* 403 U.S. at 469.

Therefore, suppression is warranted here. The "government agents effect[ed] a widespread

seizure of items that were not within the scope of the warrant, and [did] not act in good faith." *Wey*, 256 F.Supp.3d at 410 (internal citation and quotation marks omitted). "The rationale for blanket suppression is that a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is essentially indistinguishable from a general search." *Shi Yan Liu*, 239 F.3d at 141. *Accord United States v. Cardwell*, 680 F.2d 75, 78-79 (9th Cir. 1982); *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988). The government's actions in seizing and searching such a large volume of unresponsive material demonstrates "grossly negligent or reckless disregard of the strictures of the Fourth Amendment, and that is sufficient to infer a lack of good faith…. These are precisely the sort of circumstances, rare or not, that call for blanket suppression." *Wey*, 256 F.Supp.3d at 410. The search requested in this case was a general search for all of Mr. Shelton's personal information on two social media accounts.

### III.    CONCLUSION

Because of the illegal actions of law enforcement in this case, the electronic information obtained as a result of that unconstitutional conduct should be suppressed. Mr. Shelton requests leave to file any additional motions which may become necessary based on the government's response, disclosure of additional information, or newly discovered facts as a result of his ongoing investigation into this case.

Dated: April 29, 2022

Respectfully submitted,

Susan K. Marcus, Esq.
Elisa Y. Lee, Esq.
Law Firm of Susan K. Marcus LLC
29 Broadway, Suite 1412
New York, NY 10006
susan@skmarcuslaw.com

*Attorneys for Bushawn Shelton*