UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

BUSHAWN SHELTON,

Defendant.

18 Cr. 609 (RJD)

**BUSHAWN SHELTON'S MOTIONS *IN LIMINE*,
REQUESTS FOR DISCLOSURE AND CONTINUANCE**

Susan K. Marcus
Elisa Y. Lee
Law Firm of Susan K. Marcus LLC
29 Broadway, Suite 1412
New York, NY 10006
susan@skmarcuslaw.com

*Attorneys for Bushawn Shelton*

# TABLE OF CONTENTS

*PRELIMINARY STATEMENT*........................................................................................ *1*

*ARGUMENT* .............................................................................................................. *1*

I.     REQUEST FOR WRITTEN PROFFER AND HEARING ON ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS UNDER FED. R. EVID. 801(d)(2)(E) ..............................1

II.    REQUEST FOR EARLIER DISCLOSURE DEADLINE FOR VOLUMINOUS, PREJUDICIAL, OR CONTESTED EVIDENCE ........................................................3

III.   THE GOVERNMENT SHOULD BE PRECLUDED FROM INDICATING THAT THE FIREARM MR. SHELTON IS CHARGED WITH POSSESSING IN COUNT FIVE HAS ANY CONNECTION TO THE OTHER COUNTS IN THE INDICTMENT..........................5

IV.   THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE REGARDING CELL-SITE LOCATION DATA .......................................6

V.    THE GOVERNMENT'S EXPERT DISCLOSURES WERE INADEQUATE AND THE COURT SHOULD PRECLUDE THE GOVERNMENT'S EXPERTS AT TRIAL......................7

VI.   THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE PRODUCED AFTER THE COURT'S DISCOVERY DEADLINE, AND THE COURT SHOULD GRANT MR. SHELTON A CONTINUANCE..............................................9

VII.  MR. SHELTON SHOULD BE ALLOWED TO ATTEND TRIAL IN NON-JAIL CLOTHING, AND THE GOVERNMENT SHOULD BE PRECLUDED FROM INDICATING MR. SHELTON'S INCARCERATION STATUS; ALTERNATIVELY, COUNT SEVEN SHOULD BE SEVERED OR BIFURCATED ...............................................12

*CONCLUSION*....................................................................................................*14*

## PRELIMINARY STATEMENT

Defendant Bushawn Shelton, by and through his counsel, moves for advance disclosure of any statements the government intends to introduce under Fed. R. Evid. 801(d)(2)(E); and *in limine* to preclude the government from introducing prejudicial evidence, late-disclosed evidence, and expert testimony for which there has been insufficient notice. He also renews his motion for a continuance. Finally, he moves to prevent the government from introducing prejudicial evidence regarding a gun found in his home pursuant to a search, for severance of count seven or to prevent the government from discussing his status of pretrial incarceration.

Mr. Shelton recognizes that some of his evidentiary objections will be addressed by the Court during trial. Further, the government has not yet produced its trial exhibits, for which the Court set a deadline of August 10, 2022. Yet there are a few areas where we request that the Court amend its order and set an earlier disclosure deadline, as we anticipate having to make more detailed and informed objections. We have addressed those limited categories below. For the remainder of the objections, Mr. Shelton will make more specific objections on a case-by-case basis as they apply to specific exhibits and items of evidence, once they are disclosed.

## ARGUMENT

### I.      REQUEST FOR WRITTEN PROFFER AND HEARING ON ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS UNDER FED. R. EVID. 801(d)(2)(E)

Under Fed. R. Evid. 801(d)(2)(E), a statement is admissible if the Court finds (1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy. *See Bourjaily v. United States,* 483 U.S. 171, 175 (1987); *United States v. Tracy,* 12 F.3d 1186, 1196 (2d Cir. 1993); *United States v. Rivera*, 22 F.3d 430, 435-36 (2d Cir. 1984). The government must prove by a preponderance of the evidence that a statement is admissible

under this rule. *See United States v. De Jesus*, 806 F.2d 31, 34 (2d Cir. 1986). Statements made to

conceal criminal conduct after the main objective of the conspiracy has either failed or been

achieved are not admissible as coconspirator statements. *See Lutwak v. United States*, 344 U.S. 604,

616-18 (1953); *see also Dutton v. Evans*, 400 U.S. 74, 81 (1970) ("It is settled that in federal conspiracy

trials the hearsay exception that allows evidence of an out-of-court statement on one conspirator to

be admitted against his fellow conspirators applied only if the statement was made in the course of

and in furtherance of the conspiracy, and not during a subsequent period when the conspirators

were engaged in nothing more than concealment of the criminal enterprise."). "Idle chatter" does

not meet the test, *see e.g., United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980); nor does a

"'merely narrative'" description by one co-conspirator of the acts of another. *See United States v.

Heinemann*, 801 F.2d 86, 95 (2d Cir. 1986) (quoting *United States v. Birnbaum*, 337 F.2d 490, 495 (2d

Cir. 1964)).

Fed. R. Evid. 104(a) states that "[p]reliminary questions concerning … admissibility of

evidence shall be determined by the court." *See also United States v. Mastropieri*, 685 F.2d 776 (2d Cir.

1982). The rule requires that the Court make a determination of admissibility before evidence is

presented to a jury. To have sufficient time to determine the admissibility of evidence, to ensure that

inadmissible evidence is not before the jury, and to preserve the record for appeal, we request that

the Court order the government to submit written proffers for the co-conspirator statements it seeks

to admit under Rule 801(d)(2)(E) by August 1, 2022, three weeks in advance of trial.

The sheer volume of co-conspirator statements will make the Court's, not to mention

defense counsel's, task virtually impossible if it is done during trial. Pretrial disclosure and a ruling in

advance of trial *is* economic in that it avoids the necessity of a mistrial should the Court

conditionally admit hearsay statements for which the government fails later to establish admissibility

under Rule 801(d)(2)(E). To the extent the government objects to revealing names of cooperating

witnesses ten days before it has offered to do so, this case is one month away from trial, and the disclosures would only be nine days ahead of the current date. Further, the identities of informants and cooperating witnesses are not, and have not been, secrets to the defendants.

The government has not yet identified those statements that it intends to use from the phones seized in this case, nor all the individuals the government believes to have been a co-conspirator in the case, leaving Mr. Shelton to guess from the universe of voluminous material in discovery the precise communications he will need to defend against at trial. It will be unmanageable for the parties to litigate this during the trial, and will cause unnecessary delays and inconveniences to the jury. It is also unworkable for the defense teams to wait until August 10, 2022, two weeks before the trial, to litigate this. We will be digesting the 3500 material, litigating issues that may arise from the 3500 material, continuing to conduct investigation, preparing our own cases, and attempting to meet with our clients during the never-ending lockdowns at MDC (and, with the government's separation orders, only one attorney can visit a client at a time). The Court has wide discretion to order the government's earlier disclosure. We therefore ask that the Court order the government to disclose specifically those statements it intends to seek to introduce under Fed. R. Evid. 801(d)(2)(E) by August 1, 2022.

## II.   REQUEST FOR EARLIER DISCLOSURE DEADLINE FOR VOLUMINOUS, PREJUDICIAL, OR CONTESTED EVIDENCE

The Court set a deadline of August 10, 2022 for the government's exhibits. In addition to the proffer on co-conspirator statements, we request that for certain evidence described below, the Court order the government to disclose the following evidence it seeks to admit at trial by August 1, 2022.

### A.   *Electronic Device Disclosures*

The government has identified at least 36 electronic devices that it has represented to the defense it anticipates using at trial, including at least 24 cell phones, three computers, and one tablet

seized from various individuals in this case. On April 18, 2022, the government also disclosed the evidence extracted from various devices and social media accounts that it "may" rely on at trial; this disclosure amounted to a data dump of over 10 gigabytes and thousands upon thousands of pages of data.[1] Further, in its April 18, 2022 letter, the government wrote that it "may supplement and reserves the right to supplement this material in advance of trial." As noted in Mr. Shelton's pending motion to suppress electronic devices, *see* ECF No. 324, the devices seized from Mr. Shelton's residence alone contain hundreds of gigabytes of data. Much of this data consists of text messages, emails, and other content that has a high likelihood, given the nature of such types of communication, of containing hearsay. Each text message, email, or other content from the devices must be assessed on an individual, case-by-case basis for admissibility. We request that the Court order the government to disclose the evidence from the devices it intends to rely on at trial by August 1, 2022. Once the government has noticed the evidence it intends to introduce, Mr. Shelton reserves the right to move *in limine* to preclude any such content on the ground that it is hearsay, as well as on the ground that it is irrelevant, does not meet the Rule 403 balancing test, *see* Fed. R. Evid. 403, constitutes impermissible propensity evidence, *see* Fed. R. Evid. 404(b), that it is inauthentic, *see* Fed. R. Evid. 901, or any other relevant objections.

B. *Prejudicial and Inflammatory Evidence*

Certain evidence that the government will seek to introduce will be highly prejudicial in front of the jury. For example, autopsy photos, medical records of or pictures of injuries of Sylvester Zottola from December 27, 2017, or of Salvatore Zottola from July 11, 2018, videos of Sylvester Zottola speaking to the police about some of the incidents (on bodycam footage), and text messages

---

[1] From one of the devices alone, this data dump included over 1,400 pages of text messages, calls, and other cell phone data.

from Sylvester Zottola's family that are not relevant to the government's case would elicit undue sympathy that will unfairly prejudice the defendants and confuse the jury. We ask that the Court order the government to disclose by August 1, 2022 a list of any photos of, and text messages to or from, Sylvester Zottola that it intends to use at trial, and whether it will seek to introduce any bodycam footage of Sylvester Zottola, and any autopsy or medical records it seeks to introduce from any of the incidents. We will then be able to make objections in advance of the trial date.

### III. THE GOVERNMENT SHOULD BE PRECLUDED FROM INDICATING THAT THE FIREARM MR. SHELTON IS CHARGED WITH POSSESSING IN COUNT FIVE HAS ANY CONNECTION TO THE OTHER COUNTS IN THE INDICTMENT

In its May 27, 2022 expert disclosure, the government produced two pages of materials related to the anticipated testimony of its proposed expert, Special Agent Matthew Fleming, regarding the identification of the firearm that Mr. Shelton is charged with possessing in this case. *See* ECF No. 357 at 2. This firearm, among other items of evidence, is the subject of a pending motion to suppress. *See* ECF No. 325.

This firearm was recovered during a search of Mr. Shelton's residence and relates only to Count Five, which charges Mr. Shelton with being a felon in possession of a firearm, and is the subject of a pending motion to sever counts. *See* ECF No. 336. The government has not stated or otherwise indicated, nor does the discovery reflect, that the firearm is in any way connected to the other counts, including the counts charging murder-for-hire conspiracy and causing death through use of a firearm. The firearm has not been connected to any of the incidents the government alleges were part of the murder-for-hire conspiracy. The government should thus be precluded from introducing any evidence suggesting that this firearm has any relation or connection to the other counts charged in this case. Such evidence would constitute impermissible propensity evidence and any relevance would be substantially outweighed by unfair prejudice. *See* Fed. R. Evid. 403, 404(b).

IV.   **THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE REGARDING CELL-SITE LOCATION DATA**

In its May 27, 2022 expert disclosure, the government states that its proposed expert, Special Agent Richard Busick, is "expected to testify at trial regarding approximate location of certain cellular telephones, previously produced in Rule 16 discovery," including on at least 24 different dates ranging from September 8, 2017 to February 19, 2019. ECF No. 357 at 2. We join Mr. Anthony Zottola's motion *in limine* to preclude this expert. We add the following brief arguments.

As noted above, the government has identified at least 36 electronic devices that it has represented to the defense it anticipates using at trial, including at least 24 cell phones. The government seized in total over 65 cell phones in this case and has also produced cell phone records for over 60 phone numbers. The government in its expert notice does not identify which phones are the "certain cellular telephones" its proposed expert is expected to testify about. Indeed, it does not provide any information at all regarding the basis for Mr. Busick's anticipated testimony. This notice fails to comply with the requirements of Rule 16 of the Federal Rules of Criminal Procedure because it does not state the specific opinion(s) to be offered by the expert witness, the bases and reasoning for each such opinion, and the qualifications of the experts to reliably form such opinions. *See, e.g.,* *United States v. Kaufman*, No. 19-cr-504 (LAK), 2021 U.S. Dist. LEXIS 170367, at *45 (S.D.N.Y. Sep. 7, 2021) ("The substance of Dr. Guedj's proposed testimony remains something of a mystery. Despite multiple rounds of expert disclosures . . . it is unclear exactly what Dr. Guedj's proposed opinions would have been, what his methodology (if any) had been, and how the slides he produced . . . would have related to his proposed testimony. . . . This has not sufficed to satisfy the expert disclosure requirements of [**Rule 16**] and to enable the Court to properly perform its gatekeeping role under *Daubert*.").

The government further states in a footnote that it "reserves the right to elicit testimony

from Special Agent Busick at trial relating to cell-site location data pertaining to any of the other cell phone numbers for which such data has been provided to the defendants in discovery." ECF No. 357 at 2 n.2. This encompasses a massive amount of data, rendering it impossible for Mr. Shelton to make any informed objections at this time to the government's proposed expert and testimony. Given that the deadline for expert disclosures has passed, and for the additional reasons set forth in Mr. Anthony Zottola's motion *in limine*, the government should thus be precluded from introducing such evidence and testimony.

### V.    THE GOVERNMENT'S EXPERT DISCLOSURES WERE INADEQUATE AND THE COURT SHOULD PRECLUDE THE GOVERNMENT'S EXPERTS AT TRIAL

Additional expert notices provided by the government fail to comply with the requirements of Rule 16 because they do not state the specific opinion(s) to be offered by each witness, the bases and reasoning for each such opinion, and/or the qualifications of the experts to reliably form such opinions. Such information is required for the defense to be able to challenge the opinions under Rule 702. Mr. Shelton joins Mr. Anthony Zottola's motion *in limine* that more completely lays out the multiple problems with the government's disclosures in this case.

We raise the additional problem with the government's expert disclosures in two areas. As the Court is aware, the Court's deadline for Rule 16 expert disclosures was July 11, 2022. The government produced a supplemental expert disclosure after the deadline, on July 15, 2022, in which it states that its proposed expert regarding ballistic evidence, Detective Shaun Jaikissoon, is no longer available to testify, and that it will provide the name and qualifications of the replacement testifying ballistic expert as soon as possible. As of this date, the government has not yet done so.

Further, the disclosure states that the anticipated conclusions of the expert are described in the reports produced in the government's late April 18, 2022 discovery production at BLANCO ET AL 035879-036056. These reports, however, only provide, at most, the conclusory statement that a

pistol was found to be operable, and that cartridges were either found to be inoperable or damaged. No worksheets, notes, photographs, or other underlying records supporting the conclusion have been produced by the government. This is insufficient. *See, e.g., United States v. Kaufman*, No. 19-cr-504 (LAK), 2021 U.S. Dist. LEXIS 170367, at *45 (S.D.N.Y. Sep. 7, 2021) ("[I]t is unclear exactly what Dr. Guedj's proposed opinions would have been, what his methodology (if any) had been, and how the slides he produced . . . would have related to his proposed testimony. . . . This has not sufficed to satisfy the expert disclosure requirements of [Rule 16] and to enable the Court to properly perform its gatekeeping role under *Daubert*."). Given that the deadline for expert disclosures has passed, the government should thus be precluded from introducing any expert testimony regarding these conclusions.

The government's expert disclosures regarding its proposed DNA experts, Tiffany Smith and Lara D. Adams, regarding the examination of DNA from a face mask and jacket recovered by law enforcement on November 2017, are also insufficient. With its June 14 and July 11, 2022 expert disclosures, the government produced **650** pages of discovery not previously produced that should have been subject to the January 14, 2022 discovery deadline. *See* ECF No. 376 at 4 (producing SMITH000008-277), ECF No. 392 at 2 (producing SMITH000730-1109). The government had previously only produced a paltry 10 pages of reports stating the summary conclusions of this DNA analysis, without providing any of the underlying documentation or case files from the labs, which date from years prior. Undersigned counsel requested additional information from the government in detail on March 25, 2022, and sent three follow-up emails inquiring about the status of the information we needed to conduct our own review, engage a possible expert, and inform our case. On June 15, 2022, the government finally responded that they were working on our request. The bulk of the information was not received until July 15, 2022, nearly four months after our request. The government was fully capable of producing this information earlier, and the delay has greatly

prejudiced Mr. Shelton's readiness in this case. As a result, the government should be precluded from offering DNA evidence in this case.

### VI.   THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE PRODUCED AFTER THE COURT'S DISCOVERY DEADLINE, AND THE COURT SHOULD GRANT MR. SHELTON A CONTINUANCE

The deadline the Court set for the government to complete discovery was January 14, 2022. *See* Minute Entry for December 6, 2021 Status Conference. Since then, the government has produced voluminous additional productions, on April 18, 2022, July 1, 2022, and July 15, 2022. We have already described the voluminous materials disclosed on April 18, 2022, including Mr. Anthony Zottola's devices, and the resultant prejudice to Mr. Shelton in withholding Mr. Zottola's devices from him until three months before trial, and more than three months after the Rule 16 discovery deadline. We are awaiting the Court's rulings on severance and a continuance, at least for Mr. Shelton, who is the most uniquely prejudiced by the government's delay.

The late disclosures of material on July 1 and July 15, 2022 are equally inexcusable. The government's late productions in July 2022 contain critical information that Mr. Shelton has been requesting in this case, including the bases for scientific evidence, necessary to mount a *Daubert* challenge or rebuttal, and additional Rule 16 evidence that should have been produced well in advance. The government's large dumps of information in the three months before trial, of evidence critical to Mr. Shelton and available well beforehand, should not go unremedied. At the very least, the government should be precluded from introducing the evidence produced so late, and so close to trial. However, exclusion does not cure the prejudice to Mr. Shelton. Some of the information disclosed is helpful to Mr. Shelton, and we will need additional time to follow up on the late-disclosed discovery. The late disclosures only add to our need for a continuance.

In its response to Mr. Shelton's requests for exculpatory and impeachment information under *Brady v. Maryland* and its progeny, the government either responded that the information did

not exist (or that it was not *Brady* and he could not have it, *see* ECF No. 359, at 60-65). Despite the government's protestations, the government ultimately disclosed some of what we requested. This should cause concern to the Court, for despite what the government assures, they have been withholding material favorable to the defense.

For example, counsel requested the underlying case files for three arrests known to be made in this case by letter dated April 5, 2022, in its *Brady* request to the government, and again in its *Brady* motion to the Court on April 29, 2022. As stated above, the government's response to our *Brady* demand stated that it did not have any *Brady* information, or that it was 3500 material and we weren't yet entitled to it. Yet on July 1, 2022, the government turned over hundreds of pages of files, videos, and expert reports, including information related to these prior arrests. The case files of these arrests made were directly related to this case (they each related to incidents the government alleges is part of the criminal conduct), and should have been disclosed both as Rule 16, and also as exculpatory and impeachment information. Within these records are a recent analysis conducted by the government showing that latent prints were recovered from a gun and a car alleged to have been involved in the June 12, 2018 incident (one of the incidents the government alleges was part of the criminal conduct in this case). The government disclosed lab reports conducted in *June 2022*, four years after the property was recovered, that show that Mr. Shelton's prints were *not* a match.

On July 15, 2022, the government again dumped additional discovery on the defense, which is also dated well before January 14, 2022 and could have been disclosed earlier. That production includes critical bases for challenging scientific evidence and experts and Rule 16 discovery, including financial records relating to Mr. Shelton dating from 2016 to 2019, and telephone records dating from 2017 to 2018, including "time on tower information"; a latent print report from 2017; Bureau of Prison records for Mr. Shelton from 2018 and 2019; and other records related to his codefendants. These Rule 16 discovery materials were disclosed more than *six months* after the

10

January 14, 2022 deadline.

The government should certainly be precluded from introducing any of this discovery at trial as it was produced well beyond the Court's deadline. *See* Fed. R. Crim. P. 16(d)(2) (if a party fails to comply with its discovery obligations, the Court may "prohibit that party from introducing the undisclosed evidence"); *United States v. Brown*, 308 F. Supp. 3d 620, 627-28 (D.R.I. 2018) (ordering exclusion of Cellebrite report where the government's late production "violated this Court's order on timeliness. . . . Although the government argues that it did not have this report in its possession any earlier, it most certainly had Mr. Brown's phone, and had every opportunity over the preceding two years to conduct this analysis. Although there is no evidence the government acted intentionally or in bad faith in producing this report, this late production comes at the end of a long series of late disclosures, concerns evidence that the government admits is crucial to its case, and runs contrary to the purpose of Rule 16 of the Federal Rules of Criminal Procedure.").

Yet there is a greater remedy required for Mr. Shelton. The Court stated during the July 12, 2022 status conference that a lot of discovery has been produced, and declined to intervene on behalf of defendants. Perhaps we have failed to adequately explain the burdens placed on the defense teams by the government's inadequate and late discovery disclosures in this case. Critical and helpful information to Mr. Shelton has only been produced to him in the last *3* months. The earlier disclosures were general police reports, requests for lab reports, hours and hours of surveillance video, and, as we have gone over and over, cell phone and other device extractions and records, which have been the most cumbersome to review, analyze and compare. (The government also keeps resending large amounts of the same discovery, buried in new productions, so we have to re-review everything all over again to see if there something new, or if it is just another dump of the same police reports. We have had to undertake duplicative reviews of additional dumps of numerous versions of the same discovery from the government, asking ourselves, for example: Was a word or

name redacted that is now revealed? Are there new laboratory reports or conclusions attached? New video angles not previously disclosed? That process alone has taken an inordinate amount of time to sort out.) As for scientific evidence, the government produced cursory conclusions, but not the underlying raw data needed to evaluate a reliability challenge or to prepare our own case in rebuttal.

And there's more. We have also learned of additional critical *Brady* information that we have requested from the government, that should have been disclosed years prior, and certainly when we specifically asked for it several times this year. We are awaiting the government's response to our specific request, but we wish to inform the Court that there may be additional issues to raise regarding severance, and that affect Mr. Shelton's readiness for trial in August 2022.

The government's withholding of discovery until the last minute is the latest in a series of missteps by the government that has unduly and singularly prejudiced Mr. Shelton. More of the evidence pertains to him than the other defendants; yet the government has disparately and unfairly handled how it has meagerly doled out discovery to him. This is grossly unfair. Mr. Shelton has a Sixth Amendment right to effective assistance of counsel; he has a right to meaningfully confront the witnesses against him; he has a right to due process of law. All of these rights are threatened by the government's disclosure delays in this case. We are not asking for sanctions or dismissal; simply an effort to be able to review, respond to and investigate the evidence in this case. A continuance is necessary to uphold and ensure Mr. Shelton's basic constitutional rights.

**VII.    MR. SHELTON SHOULD BE ALLOWED TO ATTEND TRIAL IN NON-JAIL CLOTHING, AND THE GOVERNMENT SHOULD BE PRECLUDED FROM INDICATING MR. SHELTON'S INCARCERATION STATUS; ALTERNATIVELY, COUNT SEVEN SHOULD BE SEVERED OR BIFURCATED**

Mr. Shelton respectfully requests that he be allowed to wear non-jail attire when he appears in Court, from the first day of trial, and continuing through the end of his trial. *See Estelle v. Williams*, 425 U.S. 501, 512 (1976) (the government cannot "compel an accused to stand trial before a jury

while dressed in identifiable prison clothes"). This Court should also preclude the government from referencing the fact that Mr. Shelton is in custody throughout trial proceedings because it would deprive him of the presumption of innocence. *See, e.g.*, *United States v. Halliburton*, 870 F.2d 557, 559 (9th Cir. 1989) ("A jury's observation of a defendant in custody may under certain circumstances 'create the impression in the minds of the jury that the defendant is dangerous or untrustworthy' which can unfairly prejudice a defendant's right to a fair trial notwithstanding the validity of his custody status.") (quoting *Holbrook v. Flynn*, 475 U.S. 560, 569 (1986)).

Alternatively, the Court could sever or bifurcate Count Seven,[2] which charges him with possessing contraband—a cell phone—in prison. The government may argue that this cell phone is connected to the conspiracy charged in Count One. However, the fact that the cell phone was recovered in a prison (at MDC Brooklyn) has no relevance to the alleged conspiracy or any of the other counts in the indictment. Further, Count Seven charges conduct that occurred between December 17, 2018, and May 25, 2019, a period beginning months after the alleged conduct underlying the other counts against Mr. Shelton in the indictment, including the conspiracy charged in Count One, which ended on October 11, 2018 as alleged in the indictment. Count Seven does not charge Mr. Shelton with using the cell phone in connection with the conspiracy or any of the other charges in the indictment; it simply charges him with having contraband in prison. Without any such connection, joinder of Count Seven with the other counts in the indictment is improper. The unfair prejudice Mr. Shelton will suffer if this charge is not severed or bifurcated cannot be cured with a jury instruction (but would rather be amplified by one) because it will necessitate referencing Mr. Shelton's incarceration status, which, as discussed above, would deprive him of his presumption of

---

[2] Mr. Shelton has also moved to sever or bifurcate Counts Five and Six; that motion is pending before the Court. *See* ECF No. 336.

innocence.

## CONCLUSION

Mr. Shelton respectfully requests that the Court preclude the government from introducing certain evidence at trial, to continue his case (and sever from his codefendants), and order the government to make the requested disclosures, as described and for the reasons stated above.

Dated: July 22, 2022

Respectfully submitted,

Susan K. Marcus
Elisa Y. Lee
Law Firm of Susan K. Marcus LLC
29 Broadway, Suite 1412
New York, NY 10006
susan@skmarcuslaw.com

*Attorneys for Bushawn Shelton*