1

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2    - - - - - - - - - - - - - - X
     UNITED STATES OF AMERICA,     : 18cr609(RJD)
3                                  :
               Plaintiff,          :
4                                  :
               -against-           : United States Courthouse
5                                  : Brooklyn, New York
     SHELTON, ET AL,               :
6                                  :
               Defendant.          : Tuesday, July 30, 2019
7                                  : 11:00 a.m.
     - - - - - - - - - - - - - - X
8       TRANSCRIPT OF CRIMINAL CAUSE FOR A STATUS CONFERENCE
             BEFORE THE HONORABLE RAYMOND J. DEARIE
9                UNITED STATES DISTRICT JUDGE

10              A P P E A R A N C E S :

11   For the Government:    UNITED STATES ATTORNEY'S OFFICE
                            Eastern District of New York
12                          271 Cadman Plaza East
                            Brooklyn, New York 11201
13                          BY:LINDSAY K GERDES, ESQ.
                               KAYLA BENSING, ESQ.
14                             MARGARET GANDY, ESQ.
                               Assistant United States Attorneys
15
     MICHAEL HUESTON, ESQ., Attorney for Herman Blanco
16   KEVIN KEATING, ESQ., Attorney for Arthur Codner
     AVRAHAM MOSKOWITZ, ESQ., Attorney for Arthur Codner
17   DONALD DUBOULAY, ESQ., Attorney for Jason Cummings
     BRUCE KOFFSKY, ESQ., Attorney for Jason Cummings
18   MARK DEMARCO, ESQ., Attorney for Alfred Lopez
     BOBBI STERNHEIM, ESQ., Attorney for Alfred Lopez
19   ANTHONY CECUTTI, ESQ., Attorney for Branden Peterson
     DAVID RUHNKE, ESQ., Attorney for Branden Peterson
20   MICHAEL MARINACCIO, Attorney for Himen Ross
     ELIZABETH MACEDONIO, Attorney for Himen Ross
21   JEFFREY PITTELL, ESQ., Attorney for Julian Snipe
     THOMAS AMBROSIO, ESQ., Attorney for Julian Snipe
22   SUSAN MARCUS, ESQ., Attorney for Bushawn Shelton
     RICHARD JASPER, ESQ., Attorney for Bushawn Shelton
23   EVAN LIPTON, ESQ., Attorney for Anthony Zottola, Sr.

24   Court Reporter:    SOPHIE NOLAN

25
```

Proceedings                                    2

1                    (In open court.)

2           (The Hon. Raymond J. Dearie, presiding.)

3                  (Defendants present.)

4           THE COURTROOM DEPUTY:  We are on this morning for a

5    status conference.  This is *USA versus Shelton, et al.*, docket

6    number CR-18-609.  We are on superseder 2 and it's my

7    understanding that all defendants have been arraigned on

8    superseder 2.

9           Is that correct, Government counsel?

10          MS. GERDES:  That's correct.

11          THE COURT:  Thank you.

12          THE COURTROOM DEPUTY:  And the Court reporter has

13   everyone's appearance.

14          THE COURT:  Good morning, everyone.  Welcome back.

15   I will ask the USA where things stand.

16          MS. GERDES:  Thank you, Your Honor.  As we notified

17   the Court by letter I believe last week, we have an update in

18   terms of the capital case review which is that our office in

19   the Eastern District has requested from each defense counsel a

20   mitigation submission.

21          So we have previously talked to the entire defense

22   group about this by phone and the group has requested and the

23   Government has no objection that we schedule another status

24   conference in the case for approximately 60 days from now, and

25   at that time defense counsel can give good estimates of when

Proceedings                                                    3

1  those mitigation submissions will be ready.

2           In the meantime, discovery in the case is ongoing.

3  As recently as this morning we made a very substantial

4  production of all or most of the search warrant affidavits and

5  search warrants that have been done in this case which I think

6  will help with the entire process.  So that's where we are in

7  terms of discovery and in terms of the capital case review.

8  Discovery is on going.

9           We still have a couple of more smaller

10  productions to get out, but we have been working hard.

11           THE COURT:  Can you give me some indication as to

12  when the defense submissions to your office will be submitted?

13           MS. GERDES:  Your Honor, I believe that when we come

14  back in 60 days, the idea is that the defense group will have

15  spoken with the Government about a more firm deadline.  I

16  think at this point, given the recent superseding indictment

17  that came down, a lot of new counsel has joined the case, that

18  people are still getting up to speed and so the idea is that

19  we will come back in 60 days and at that point address Your

20  Honor with a more definite timeline on when the mitigation

21  submissions will come to our office.

22           THE COURT:  And all defendants as of now are death

23  eligible?

24           MS. GERDES:  That's correct, Your Honor.

25           THE COURT:  All right.  I understand with respect to

Proceedings                                  4

1  Anthony Zottola, there may be a change in representation.

2          MR. MAZUREK:  Yes, Your Honor.  Henry Mazurek and

3  Evan Lipton.  We have been retained to represent Mr. Zottola.

4  My understanding is Mr. Zottola intends us for us to represent

5  him going forward and we ask that Mr. Lawrence, pursuant to

6  his motion that was filed yesterday, seeks relief and we ask

7  to be substituted in as counsel.

8          THE COURT:  You filed a notice.

9          MR. MAZUREK:  Yes.

10          THE COURT:  Welcome to the case.

11          MR. MAZUREK:  Thank you.

12          THE COURT:  I do not know if there is much to say.

13  Let me throw it open to the defense side of the room.

14  Anything I can do today to help?  Silence is golden.  I know

15  you have got a lot to do.  I signed all the authorizations.  I

16  do not know that there are any outstanding.  If there are, by

17  all means let Ms. Mulqueen know.  I think I signed all of

18  them.

19          Yes, sir?

20          MR. MAZUREK:  Just for clarity, with respect to

21  Mr. Zottola, Mr. Andrew Patel has been assigned as learned

22  counsel and we ask that that be continued.

23          THE COURT:  Yes, of course.

24          MR. HUESTON:  Your Honor, one issue I wanted to

25  raise is we had talked about separation at our prior two

1   conferences.  This is the problem that we have been running

2   into and I don't know if there is going to be a solution, but

3   I do want to raise it because it impacts our ability to meet

4   with our clients.  We try to coordinate as best we can.  We

5   e-mail the group saying I'm going to be there on Friday, but

6   you shouldn't come because you won't be able to visit.  It

7   really is slowing down the process.

8            THE COURT:  I understand that.

9            MR. HUESTON:  So if the Government can look into the

10  separation order, it would be very helpful in terms of

11  alleviating this sort of structured delay.  There is no other

12  way of putting it.  We have these mitigation specialists.  We

13  have investigators.  We have lawyers.  And it's just really --

14  it's just over bearing, Your Honor.

15           Maybe there's a systemic problem the MDC should not

16  have separations for attorney visits so we can get in there

17  and do our work, but that is maybe a conversation for a

18  different day, but I do really think the Government should

19  look at the separations.  They have the second superseding

20  indictment and so the current one has been withdrawn so to

21  speak and maybe we can reduce the amount of separation orders.

22           THE COURT:  It is a fair request.  I do not suggest

23  for a moment that this isn't exactly as you portray it.  It's

24  really a handicap to all of you.  I am sympathetic to the

25  facility.  With the separation orders in place it becomes a

Proceedings                                                      6

1   labyrinth of people and movement and so forth.  So I think it

2   is a sensible request to ask the Government yet again to

3   review the separation orders.

4           To the extent you can alleviate some of the pressure

5   on the facility, it would be welcome, particularly in this

6   early but critical phase where things have to be done and

7   prepared and it takes a lot of communication between attorney

8   and client.

9           MS. GERDES:  Your Honor, if I may just briefly

10  respond.  I think that there is a real need based on the

11  charges alone for the separation requests here, but in

12  addition to that, one of the bases for one of the new charges

13  in the second superseding indictment is evidence of

14  communication by one of these defendants using a phone to, at

15  the time, an unindicted co-conspirator.

16          Further, in one of the arraignments in this case

17  three of the defendants failed to appear at the initial

18  arraignment that they were supposed to come to which suggests

19  that they were acting in concert.  The fourth one would have

20  probably done the same but he was in the SHU at the time.  So

21  there has been real issues with these defendants in this case

22  even setting aside the charges.

23          The other thing I would say is we have asked the

24  defense group repeatedly to let us know any occasion in which

25  the separation requests were an issue.  I heard about one

Proceedings                                                        7

1    instance for the first time this morning and so I would

2    continue to request from the defense group if they would

3    actually let us know if this is an issue.

4            THE COURT:  It is always an issue.  If two lawyers

5    in this group want to go to the facility on a given day, it is

6    an issue.

7            MS. GERDES:  Understood, Your Honor, but what I

8    think the Government is trying to do is balance the real

9    imposition to the defense group with the need for separation

10   orders in this case and we have seen a real need for the

11   separation orders and so far we haven't heard about an

12   instance from the defense group in which it's been an issue

13   except for this morning.  And I understand that there are a

14   lot of new people joining the case.

15           There are still only six defendants in the MDC right

16   now.  So it's not quite as burdensome as it may seem based on

17   the indictment alone.  And so I would ask that we, again, just

18   continue to address this as it goes along.  If it becomes an

19   issue with the mitigation specialists and whatnot we will look

20   into that but as to where we stand today we haven't heard that

21   it's been a real, actual problem for defense counsel on any

22   specific dates.

23           THE COURT:  First of all, nobody is suggesting the

24   separations -- the separation orders are done willy-nilly

25   arbitrarily.  I understand you've got legitimate concerns.

Proceedings                                              8

1    Everyone does, whether they agree with them or not, but I am

2    wondering whether or not there is any currency, any value, in

3    getting the Government representative group from the defense

4    side of the aisle and somebody at MDC to figure out a system

5    that would mitigate all of this time and this delay which is

6    very costly -- I might add costly to the taxpayers of the

7    United States and frustrating for counsel who are under some

8    considerable pressure to get moving in terms of mitigation and

9    presentations and so forth.

10          I would strongly suggest that you or one of your

11   colleagues and a volunteer or two from the defense side, let's

12   find the right person at MDC, and figure out a way not to

13   resolve the problems completely, but to mitigate the delay and

14   the cost that comes with it.  I am going to ask you to do

15   that.

16          MS. GERDES:  I would be happy to speak with the

17   folks at MDC.  I can't promise what the resolution would be,

18   but we can have the conversation.

19          THE COURT:  With you talking to the MDC, I can

20   imagine the conversation with all due respect, but getting

21   somebody from the other side so they understand the

22   frustration and the delays and complications associated with

23   these separations orders.

24          MR. HUESTON:  Your Honor, I will volunteer since I

25   brought it up.

Proceedings                    9

1          THE COURT:  Bingo, here we go.  That will teach you.

2     Let me know.  I want to hear from you between now and our

3     60-day date.

4          Ellie, give us another date.

5          THE COURTROOM DEPUTY:  Monday, October 7th at 11

6     a.m.

7          THE COURT:  Once again, if individual problems

8     surface that warrant attention, just reach out to

9     Ms. Mulqueen.  I do not have to see you as a group.  I can see

10    you individually if necessary, so do not be shy and do not

11    wait until October to bring any problems to my attention.

12    October 7th at 11 a.m. Thank you all.

13         MS. GERDES:  Your Honor, if I may, just one final

14    thing; the case has already been designated complex and I

15    believe on the consent of all parties we would ask that time

16    be excluded under the Speedy Trial Act until October 7th.

17         THE COURT:  Unfortunately that is an obvious

18    necessity.  Any objections?  Hearing none, the time exclusion

19    continues for the reasons stated.

20         Enjoy the rest of your summer.

21         (Matter adjourned.)

22

23

24

25